JOHN C. L. DOWLING & others *vs.* BOARD OF ASSESSORS OF THE CITY OF BOSTON.

Suffolk. September 9, 1929. — September 16, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Tax,* Assessment. *Statute,* Validity, Construction, Revision. *Jurisdiction. Constitutional Law,* Due process of law, Taxation. *Equity Jurisdiction,* Suit by ten taxable inhabitants. *Municipal Corporations,* Officers and agents. *Public Officer.*

Assessors of taxes come within the descriptive terms of G. L. c. 40, § 53, and are officers of the city or town within its provisions although at

the time they are exercising the functions of public officers and in general are subject to the obligations and immunities of public officers.

The court of equity has jurisdiction under G. L. c. 40, § 53, of a suit by ten taxable inhabitants of the city of Boston seeking to restrain the assessors of taxes of that city from raising money by a levy of a tax alleged to be contrary to law and in violation of § 23 of G. L. c. 59 as amended by St. 1928, c. 379, § 5, on the ground that, before determining the amount of the tax levy for the year, the defendants did not deduct back taxes and the distributive share of income taxes, coming into the treasury of the city after the beginning of the year in question, from the total amount otherwise to be raised by taxation.

Punctuation is a minor, and not a controlling element in interpretation, and courts will disregard the punctuation of a statute, or repunctuate it, if need be to give effect to what otherwise appears to be its purpose and true meaning.

The deductions authorized by the second sentence of G. L. c. 59, § 23, as amended by St. 1928, c. 379, § 5, from the total described in the first sentence are, by the use of the word "may," couched in permissive, not mandatory, words, but with the limitation that in no event shall such deductions exceed a specified limit.

Assessors of taxes in acting in any year under said § 23 as amended are not required, before determining the amount of the tax levy for a year, to deduct back taxes and the distributive share of income taxes, coming into the treasury of the city after the beginning of that year, from the total amount otherwise to be raised by taxation.

Section 23 of G. L. c. 59 as amended by St. 1928, c. 379, § 5, is constitutional.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk on August 14, 1929, by ten taxable inhabitants of the city of Boston under G. L. c. 40, § 53, and described in the opinion.

The suit was reserved by *Field*, J., for determination by the full court.

The case was submitted on briefs.

*P. Nichols*, for the petitioners.

*F. S. Deland*, Corporation Counsel, & *S. Silverman*, Assistant Corporation Counsel, for the respondents.

RUGG, C.J.   This petition by ten taxable inhabitants of the city of Boston is brought under G. L. c. 40, § 53, to restrain the defendants, constituting the board of assessors of Boston, from raising money by the levy of a tax alleged to be contrary to law. The case was reserved on the petition and answer for determination by this court. The pertinent facts thus disclosed are these: At the beginning of the

fiscal year 1929 (which is the same as the calendar year) there was in the treasury of the city of Boston a sum in excess of $2,500,000 not appropriated, pledged, or otherwise devoted to any specific public use. This is termed free cash. Subsequent to the beginning of 1929, the city has received a sum in excess of $5,000,000 through the collection of taxes assessed in years prior to 1929 but not previously collected, known as back taxes and hereafter so designated, and a sum in excess of $250,000 as its distributive share of the State income tax for years prior to 1929 in addition to sums previously distributed to it from that source. The city has expended the whole or the greater part of all these sums for ordinary municipal purposes and for payment on account of appropriations arising and payable with respect to the fiscal year 1929. The defendants are about to assess the annual tax on taxable real and personal property in Boston for the year 1929, and are about to include in such assessment the entire annual appropriations and other sums required to be raised by taxation, and a certain percentage of overlay, less only (1) said amount of free cash on hand on January 1, 1929, (2) estimated receipts from departmental revenues, (3) amounts estimated to be distributed to the city by the Commonwealth from the excise taxes on corporations and from the State income taxes, all for the year 1929, (4) estimated amount to be received for poll taxes, and (5) an amount not in excess of the proceeds received from the personal property tax on motor vehicles as authorized by St. 1928, c. 379. Further allegations in the petition as conclusions of law from these facts are that the city and the defendants as public officers have no legal or constitutional right to make the tax levy (1) "for the purpose of meeting appropriations which have already been expended and extinguishing obligations which have already been met," (2) to raise money in order to restore to the treasury money already expended and thus create a surplus, or (3) without deducting from the total sum to be raised amounts received during the current year for back taxes and from the State income tax for previous years, and. that the proposed tax levy will violate the constitutional guaranties against disproportionate and unreasonable assess-

ments and against taxes for a purpose not public, art. 10 of Declaration of Rights, c. 1, § 1, art. 4, and c. 2, § 1, art. 11, of the Constitution of this Commonwealth, and will deprive the plaintiffs of their property without due process of law contrary to art. 14 of the Amendments to the Constitution of the United States.   The prayers of the petition are that the defendants be restrained from making the proposed assessment, A, without first deducting from the amount to be assessed (1) an amount equal to sums collected as back taxes since the beginning of the fiscal year, January 1, 1929, and (2) an amount equal to sums paid since January 1, 1929, by the Commonwealth to the city as its share from the State income taxes for years prior to 1929, or, B, in the alternative, without first deducting from the amount to be assessed, an amount equal to sums already paid by the city with respect to appropriations, expenditures and obligations of the year 1929, from the proceeds of back taxes and from sums received from the Commonwealth during 1929 as its distributive share of the State income taxes for years prior to 1929.

Question is raised as to the jurisdiction of the court to entertain the petition.   There is in this Commonwealth no general jurisdiction to entertain suits by taxpayers to restrain an illegal tax levy.   Such jurisdiction rests entirely on statute.   *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258, 259, and cases there collected.   The earliest statute of that nature was St. 1847, c. 37.   The jurisdiction in equity thereby conferred was confined to instances where a city or town had voted to raise by taxation, or to borrow, or to pay out of its treasury, money for unauthorized purposes.   *Carlton* v. *Salem*, 103 Mass. 141.   The jurisdiction continued to be restricted to cases of a vote by the municipality as the source of the proposed abuse of corporate power until the enactment of St. 1898, c. 490.   By that statute the phraseology was changed so as to authorize relief at the suit of not less than ten taxable inhabitants when a municipality or "any of its officers or agents are about to raise or expend money or incur obligations" for illegal purposes or in an unlawful manner. This was something more than a mere verbal variation in the revision of a statute, not altering its meaning, as illus-

trated by *Main* v. *County of Plymouth,* 223 Mass. 66, 69, and cases there collected.   It was a manifest enlargement of the scope of the preëxisting statute.   It made no reference to a vote of the city or town as the basis for judicial intervention.   It comprehended officers and agents as well as votes of the municipality as sources of illegal conduct to be restrained.   It comprised the whole gamut of illegal use of public funds and public credit, and included illegal raising of money by taxation, whether arising from the vote of the city or town or from action of its officers or agents in excess of power lawfully conferred.   A wider field of relief to complaining taxpayers was created than that theretofore established.   It was a new statute supplanting and changing the former in material particulars.   *Boston & Maine Railroad* v. *Billerica,* 262 Mass. 439, 449.   *Hecht* v. *Malley,* 265 U. S. 144, 156.   In these particulars the present form of the statute remains as it was fixed by the statute of 1898.   The words of the statute authorize a petition, not only when the city or town, but also when any of its officers or agents, "are about to raise . . . money" for unwarranted purposes and in an unwarranted manner.   The words "to raise money" as applied to a municipality commonly mean to raise by taxation.   *Minot* v. *West Roxbury,* 112 Mass. 1, 3.   *Mead* v. *Acton,* 139 Mass. 341, 344.   *Board of Supervisors of Dickinson County* v. *Warren,* 98 Mich. 144, 146.   Compare *Wells* v. *Salina,* 119 N. Y. 280, 288;   and *New York & Rosendale Cement Co.* v. *Davis,* 173 N. Y. 235, 239.   Assessors, like many others holding elective or appointive offices within municipalities, are often and accurately described as public officers as distinguished from agents or servants of the municipalities.   They are not subject to the direction of municipalities in the performance of duties imposed on them by statute.   *Walker* v. *Cook,* 129 Mass. 577.   *Cook* v. *Springfield,* 184 Mass. 247.   *Welch* v. *Emerson,* 206 Mass. 129.   *Cox* v. *Segee,* 206 Mass. 380.   *Bolster* v. *Lawrence,* 225 Mass. 387, 389, 390, where numerous cases are reviewed.   It is plain from examination of the statutes that the assessors are clothed with vital powers with respect to the raising of money by taxation.   Assessors are officers elected or appointed

through the instrumentality of cities and towns.   In this connection assessors come within the descriptive terms of G. L. c. 40, § 53, and are officers of the city or town as therein set forth, although at the same time exercising the functions of public officers and in general subject to the obligations and immunities of public officers.

Essential factors in raising money by taxation in a city or town under our system of law rest upon action by assessors. Those factors are the determination by the assessors of the total amount to be assessed and included in the annual tax levy as required by law, the making of the tax list showing the valuation of property, and the assessment thereon and the commitment of such tax list with their warrant to the collector of taxes.   G. L. c. 59, § 23 as amended by St. 1928, c. 379, §§ 5, 9; § 43 as amended by St. 1928, c. 14, § 1; and § 52 as amended by St. 1928, c. 14, § 5.   A method of determining the total amount to be raised by taxation by including items which under the law ought not to be so included, or by increasing that total through any unjustifiable means, would affect the amount to be raised.   Errors in respect to matters of this nature, however honestly made, formerly rendered assessors liable to personal action because of their direct effect on the amount to be raised by taxation and the sum to be exacted from the individual taxpayer.   *Stetson v. Kempton*, 13 Mass. 272, 278, 281.   *Stiles v. Municipal Council of Lowell*, 233 Mass. 174, 182.   See now G. L. c. 59, § 87.   Deviations in essential particulars by the assessors from these prescribed directions, so as to produce material differences in the amounts thus to be demanded of the taxpayer, would show that the assessors as officers of the municipality "are about to raise . . . money" in a "manner other than that . . . in which" the municipality has the legal "right and power to raise . . . money," as those words are used in G. L. c. 40, § 53.   Doubtless deviations so small as not to produce material differences might be disregarded. *Sears v. Mayor & Aldermen of Worcester*, 180 Mass. 288. *Byfield v. Newton*, 247 Mass. 46, 55.   The amounts of money set forth in the petition do not come within the maxim *de minimis non lex curat*.   They are not so trifling as to be over-

looked.  It follows that the cause of complaint set forth in the petition is within the jurisdiction of the court.  Since the remedy here invoked is conferred by the express words of the statute, it is unnecessary to consider whether other remedies might be open to the plaintiffs.

The main ground for relief urged by the petitioner is that back taxes and the distributive share of income taxes coming into the treasury of the city after January 1, 1929, ought to be deducted by the defendants from the total amount otherwise to be raised by taxation before determining the amount of the tax levy for 1929.  No attack is made upon the method pursued by the defendants in selecting the items to be added together in order to ascertain the total sum to be assessed or the items to be deducted therefrom, except upon the omission from this group of the two items specified.  It is to be observed also that the assessors have deducted from the aggregate of items to be included in the tax levy all the free cash in the treasury on January 1, 1929, and have made other deductions already noted.  The governing statute (St. 1928, c. 379, § 5, amending G. L. c. 59, § 23, as previously amended) is in these words: "Section 23.  The assessors shall annually assess taxes to an amount not less than the aggregate of all amounts appropriated, granted or lawfully expended by their respective towns since the last preceding annual assessment and not provided for therein, of all amounts required by law to be raised by taxation by said towns during said year, of all amounts necessary to satisfy final judgments against said towns and of all abatements granted on account of the tax assessment of any year in excess of the overlay of that year, and not otherwise provided for; but such assessments shall not include liabilities for the payment of which towns have lawfully voted to contract debts.  The assessors may deduct the amount of all the estimated receipts of their respective towns, except from loans or taxes other than those levied under chapter sixty A, lawfully applicable to the payment of the expenditures of the year from the amount required to be assessed; but such deduction shall not exceed the amount of the corporation tax received from the Commonwealth on or before May first of the current year on account of the as-

sessments of the previous year and of such other receipts as have been received during the preceding financial year." The plaintiffs argue that the pertinent portion of this section is its first sentence prescribing the amount to be raised, and not its second sentence authorizing certain deductions, and that the "crucial words" are "and not otherwise provided for." It is urged that these so called "crucial words" apply. to and limit the entire sentence so that, if any part of any of these amounts otherwise to be included in ascertaining the total amount of the tax levy has been paid from any source, there must be corresponding deduction from the total amount of the tax levy.

The substance of said § 23 is found first in St. 1875, c. 209, § 1. That statute was entitled "An Act to regulate and limit municipal indebtedness." That section was continued without material change until the enactment of St. 1918, c. 28, § 1, when there were added thereto the words, "and of all abatements granted on account of the tax assessment of any year in excess of the overlay of that year, and not otherwise provided for." From this origin it seems manifest that the words "and not otherwise provided for" originally were intended to apply only to the subject of abatements and not to all that went before in the sentence to which this subject was thus for the first time added. It was not then and is not now uncommon for municipalities in the annual budget either to include an item entitled "Abatements" or to place under some other heading the matter of abatement of taxes. Thus the words "and not otherwise provided for" have an appropriate signification in that limited connection. It would be tautological to treat these words as applying to the first subject mentioned in that sentence, namely, appropriations and expenditures since the last tax levy, because respecting that subject there was already the limitation "and not provided for therein." These words well could and naturally would have been omitted if the so called "crucial words" had been intended to modify all that went before. The structure of the said § 23 as a whole indicates that the enumeration of the items to be combined to ascertain the total amount of the tax levy are to be taken at their face unless provision for them is

made by some other appropriation or vote, and that all the deductions such as here in issue are enumerated in the second sentence of the section. The presence of the comma just before the so called "crucial words" is not decisive in these circumstances. Punctuation may be disregarded, although it may be resorted to as an aid in construction when throwing light on the meaning. *Commonwealth* v. *Kelley,* 177 Mass. 221, 223. *Greenough* v. *Phoenix Ins. Co. of Hartford,* 206 Mass. 247, 251, 252. "Punctuation is a minor, and not a controlling element in interpretation, and courts will disregard the punctuation of a statute, or repunctuate it, if need be to give effect to what otherwise appears to be its purpose and true meaning." *Barrett* v. *Van Pelt,* 268 U. S. 85, 90, 91.

The deductions authorized by the second sentence of said § 23 from the total described in the first sentence are by the use of the word "may" couched in permissive, not mandatory, words, but with the limitation that in no event shall such deductions exceed a specified limit. The word "may" also is employed in St. 1928, c. 379, § 9, in authorizing a further deduction on account of estimated receipts by the municipality from the personal property tax on motor vehicles. "May" is commonly used in statutes in a permissive and not a mandatory sense. *Cheney* v. *Coughlin,* 201 Mass. 204, 211, 212. *Dascalakis* v. *Commonwealth,* 244 Mass. 568, 569. That the word has that significance in said § 23 is confirmed by the provisions of G. L. c. 58, § 19, whereby assessors are compelled by the word "shall" to include by way of deduction in estimated receipts of the municipality for the purpose of determining the rate of taxation the amount to be received from the State income taxes as estimated by the commissioner of corporations and taxation. The use of the permissive word "may" in two sections touching the subject of deduction to be made by the assessors, and the use of the peremptory word "shall" in another section touching the same subject, cannot be regarded otherwise than as significant. When it is the intention of the General Court that particular action of municipal or public officers shall be imperative, apt language to that end commonly is used. Where authorization and discretion are intended, permissive

language is usually found.   There are not in any statute words of command requiring the assessors to deduct amounts received after the first of January in any year from back taxes or from distribution of the State income taxes from the total of amounts to be raised by taxation.   The assessors are simply given permissive power to make such deductions.   From the absolute requirement of G. L. c. 58, § 19, that the assessors in each year, in determining the rate of taxation, shall make allowance for the estimated receipts from the State income taxes as notified to them by the commissioner of corporations and taxation, it seems plain that no further allowance from receipts from that source was compulsory.

The argument that the effect of the action of the defendants is to create a surplus of money in the treasury of the city is not impressive.   All the free cash in the treasury on January 1, 1929, has been deducted.   There is no accumulation from year to year of unappropriated cash or credits.

It has been said in argument that the method adopted by the defendants arose from the well known fact that all municipal taxes cannot be collected during the year of the levy and that, if deduction be made from the tax levy of all expected sources of revenue, a deficit would inevitably result; hence the estimated receipts from unpaid taxes of preceding years were omitted from the calculation on the theory that they would be about the same from year to year.   Thus the deficit certain to arise from unpaid taxes for the current year was offset by receipts from unpaid taxes of previous years. And thus also the necessity of borrowing money in anticipation of payment of taxes uncollected in the current year is avoided.   The method was inaugurated, it is said, in the interest of what was deemed to be sound municipal financing and good business management.   Expenditures of the current year as provided by the budget are assessed directly for that year, and the receipts from the criticised sources are not required to be deducted by the statutes and thus may be available for municipal necessities.

The utmost that could be accomplished by adopting the contention of the plaintiffs would be to diminish the tax levy for the current year in order that in all the years to follow

there would be no unappropriated money flowing into the city treasury available for use for current expenses with the result that increased borrowings and augmented interest charges, all at the ultimate cost of the taxpayer, would be required. The statutes do not make imperative the adoption of these contentions. The probable result would appear to be to reduce the tax levy of this year at the expense of the tax levy for next year. The maximum tax rate is fixed by act of the Legislature and there is no contention that this statutory limit is exceeded. St. 1929, c. 140.

We are unable to perceive absurdities in the method followed by the defendants in assessing the taxes, or in the results which follow from that method. Taxes cannot be levied for the mere purpose of enriching the public treasury or in excess of the amount required to satisfy the needs of government. Manifestly money raised by taxation cannot be expended for any save an authorized public use. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50, and cases cited. Nothing contrary to these settled principles appears on the present record.

Our conclusion is that the method adopted by the defendants for assessing taxes is in conformity to the terms of the enabling statutes. There is nothing in *Stetson* v. *Kempton*, 13 Mass. 272; *Gerry* v. *Stoneham*, 1 Allen, 319; or *Freeland* v. *Hastings*, 10 Allen, 570, upon which the plaintiffs rely, in any degree at variance with this conclusion.

Argument has been addressed by counsel for both sides to the point whether the practice of the defendants is "economically sound." It is not necessary for us to enter that field of discussion. It is enough that that practice is agreeable to the provisions of the governing statutes.

It is doubtful whether the plaintiffs have addressed to us any argument in support of the alleged violations of their constitutional rights as set forth in their petition. No cases have been cited in support of those allegations. Assuming in their favor that there is such argument, we think that there is nothing of substance in it. There is every presumption in favor of the validity of the statute. It will not be declared void unless it is impossible within reason to interpret its

provisions in harmony with the Constitution. *Perkins* v. *Westwood*, 226 Mass. 268, 271. There is here no proposed exaction from the taxpayer of any money except for a public use. *Duffy* v. *Treasurer & Receiver General*, 234 Mass. 42, 50, and cases collected. There is nothing disproportionate in the proposed tax levy. All taxpayers are treated alike. The rate is proportional. There appears to be nothing unjust about it. *Northampton* v. *County Commissioners*, 145 Mass. 108. *Dane* v. *Jackson*, 256 U. S. 589, 598–601. No accumulation of funds in the public treasury is proposed in excess of that necessary to meet current needs arising from appropriations for lawful purposes.

*Petition dismissed.*