REGIONAL LAND CORPORATION *vs.* GEORGE A. McLAUGHLIN & another.

Suffolk.    February 10, 1956. — June 5, 1956.

Present: QUA, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Pleading, Civil,* Declaration. *Corporation,* Officers and agents.  *Fiduciary. Attorney at Law.*

An action at law for damages was a proper proceeding by a corporation seeking redress against its attorneys, one of them a director, for breach of their fiduciary duty to it.  [281]

The declaration in an action by a corporation against its attorneys, one of them a director, for breach of their contractual and fiduciary duties to it was demurrable for failure to "state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action" as required by G. L. (Ter. Ed.) c. 231, § 7, Second, by reason of containing allegations immaterial to the cause of action but likely to be understood by a jury in a sense highly derogatory and prejudicial to the defendants and a great amount of characterization as distinguished from factual allegation.  [281]

CONTRACT OR TORT.  Writ in the Superior Court dated February 18, 1955.

A demurrer was heard by *Forte,* J.

*Joseph B. Abrams,* (*Robert T. Abrams* with him,) for the plaintiff.

*George A. McLaughlin,* (*Charles S. McLaughlin & Walter H. McLaughlin* with him,) for the defendants.

QUA, C.J.   This case comes to us by report after the sustaining of a demurrer to the declaration.   It is an action at law in two counts in which the allegations are exactly alike except that the first count is stated to be in contract and alleges breach of contractual obligations and the second count is stated to be in tort and alleges breach of fiduciary obligations.

Both counts allege that in 1950 the defendant George A. McLaughlin held two qualifying shares out of a total of fifty-two shares of the stock of the plaintiff and was one of three directors; that one of these qualifiying shares was held for the benefit of one Fantasia, who was the owner of twenty-five of the remaining fifty shares; that the other qualifying share was held for the benefit of one Kepnes, who owned the remaining twenty-five shares; that George A. McLaughlin and his brother Walter H. McLaughlin, the other defendant, were the only attorneys for the plaintiff and were under a contractual (second count, fiduciary) relationship to the plaintiff to act for its best interests, and to disclose all relevant matters and all material facts; that in breach of this obligation the defendants embarked upon a course of conduct for their own selfish benefit and to the disadvantage of the plaintiff; that the plaintiff owned certain real estate which the defendant George A. McLaughlin represented to the other two directors, Fantasia and Kepnes, that he desired to purchase for himself; that these two directors at first refused to sell; that thereafter "the defendants concentrated their efforts on the director Fantasia," using various arguments to induce him to agree to a sale, one of them being that a sale could be put through by means of a legal device which would prevent any tax liability accruing to the plaintiff or to Fantasia personally; that the defendant George A. McLaughlin "harassed and applied pressure on the director Fantasia to such an extent that he caused the latter to join with him in an alleged vote of the corporation" at a meeting held while Kepnes was sick in Florida and the defendants knew he could not be present; that this vote, in which it was necessary for George A.

McLaughlin to join, was to the effect that a deed of certain lots owned by the plaintiff be given to Fantasia and that George A. McLaughlin as clerk of the corporation be authorized to execute the deed; that the by-laws required deeds to be signed by the treasurer (Kepnes) and countersigned by the president (Fantasia); that knowing who these officers were and that Kepnes would have opposed the action if he had been present, George A. McLaughlin drew up the vote and signed the deed; that "the defendants" knew that the vote was illegal and of no effect; and that as part of the same transfer of the land the defendants caused deeds from Fantasia to the Regional Restaurant, Inc., and from the latter to Walter H. McLaughlin to be drawn, executed, and recorded. Notwithstanding the foregoing allegation that the vote was illegal and of no effect, the declaration goes on to assert that record title thus came to be vested in the defendant Walter H. McLaughlin, acting for both defendants, "and the land was thus acquired from the plaintiff corporation at a sum greatly below the fair market value thereof"; that subsequently the plaintiff discovered that the money to effectuate the purchase of this land by the defendants "had not come out of their pockets" but "had been obtained" from a trust fund of which Walter H. McLaughlin was trustee, but that fact had not been disclosed to the plaintiff or to Fantasia; and that the defendants acted for their own selfish benefit with full knowledge that George A. McLaughlin was breaching his contractual (fiduciary) obligation as attorney and director.

It may be well to pause for a moment at this point to take an inventory of just what bare facts have thus far been alleged as distinguished from conclusions and characterizations of fact or law. Succinctly stated, these facts seem to be that while the defendants were attorneys for the plaintiff, and while the defendant George A. McLaughlin was one of three stockholders and directors, the defendants with the assistance of another stockholder and director and in the absence of the third stockholder and director who they knew

would oppose the transfer, secured a defective title[1] to certain land of the plaintiff for much less than the land was worth. It is true that the declaration alleges that George A. McLaughlin harassed and applied pressure to Fantasia, so that he joined in the vote to sell; but of what the harassment and pressure consisted does not appear. It is not shown to have amounted to duress. No false representations are alleged. So far as appears Fantasia may have been genuinely convinced that the sale was for the best interests of the corporation. The "legal device," whatever it was, to prevent tax liability accruing to the plaintiff or to Fantasia does not appear to have been harmful or unlawful. It does not appear that the defendants themselves knew that the land was worth more than they were paying for it. The meeting at which Kepnes was not present may have been a perfectly legal meeting. So far as appears proper notice was given, and Kepnes could have been, and perhaps was, represented by proxy. That the purchase money "had been obtained" from a trust fund is wholly immaterial in this case, and in any event it may have been properly "obtained."

But there are further allegations that must be considered in connection with those already described and that might conceivably strengthen the declaration. These in substance are that Kepnes, upon learning of the transaction previously mentioned, engaged counsel to take legal action about it; that at the same directors' meeting[2] that had previously authorized the deed to Fantasia the defendants had "improperly advised and induced the adoption of a directors' vote" (the directors McLaughlin and Fantasia participating) offering to convey to Kepnes land which he might select of "equivalent value" to that purportedly conveyed to Fantasia; that Kepnes refused to accept a deed of such land or to recognize the validity of the deed to Fantasia;

---

[1] Whether the title might become valid by a successful outcome of this action need not now be considered. See *Connihan* v. *Thompson,* 111 Mass. 270, 272; *Loomis* v. *Pease,* 234 Mass. 101, 106.

[2] In the earlier part of the declaration the vote authorizing the deed to Fantasia is called a "vote of the corporation."

that thereupon the defendants "improperly advised and induced" the plaintiff to purchase from Kepnes all of the stock owned by Kepnes, representing his half interest in the plaintiff corporation; that this was accomplished by the plaintiff conveying to Kepnes "land of an equivalent value to the land" covered by the purported deed from the plaintiff to Fantasia "plus other land having a value equivalent to one half of the remaining assets" of the plaintiff; that in reliance upon advice of the defendants, who did not want their own transaction to be disturbed, the plaintiff received less than the fair value of the land turned over to Kepnes; that at all times the defendants failed to furnish disinterested advice or to suggest that the plaintiff or Fantasia obtain disinterested advice; that at no time did the defendants "make a full and frank disclosure to the plaintiff . . . of all the relevant facts or of the dangers to the . . . [plaintiff] inherent in the acts being committed at the defendants' instigation."

What relevant facts or what inherent dangers were not disclosed does not appear. It is not alleged that the defendants obtained any interest in the land last mentioned or took any part in conveying it to Kepnes or did anything except to give advice which the declaration characterizes as improper. The allegation as to the defendants "improperly" advising and inducing the vote of the directors to make the offer to Kepnes which he refused to accept is pure surplusage. So also is the allegation in the earlier part of the declaration as to the source of the money.

The defendants contend that the plaintiff could not have been harmed, because Kepnes received half of the assets of the corporation in return for half of the stock, but this is not inconsistent with the claim that the land conveyed was worth more than half of the stock. For one thing, the plaintiff may have owed debts that reduced the value of the stock, but not the value of the land conveyed. And it does not appear, as further argued, that the plaintiff was not harmed because the only stockholders consented to what was done. Even if we assume that the stock holdings re-

mained the same throughout, it does not appear that Fantasia consented to the conveyance of land that was finally conveyed to Kepnes. That transaction could have been carried out by George A. McLaughlin and Kepnes, even over the objection of Fantasia.

And we cannot agree that on the allegations of the declaration what was done amounted merely to a distribution or liquidation of the corporate assets among its stockholders. The declaration alleges sales of assets for inadequate prices.

Neither can we agree with the defendants' contention that the only remedy of the plaintiff is in equity. Proceedings in cases of this kind have generally been instituted on the equity side of the court, but that an action at law for damages can be maintained sufficiently appears from *Warren* v. *Para Rubber Shoe Co.* 166 Mass. 97, *Cosmopolitan Trust Co.* v. *Mitchell*, 242 Mass. 95, 121, *Baker* v. *Allen*, 292 Mass. 169, 173, Fletcher, Cyc. Corporations, §§ 842, 1271, and Mechem, Agency (2d ed.) §§ 1233, 1234. See *Cunningham* v. *Commissioner of Banks*, 249 Mass. 401, 429; *Manning* v. *Campbell*, 264 Mass. 386, 389; *Putnam* v. *Scahill*, 266 Mass. 537; *Waters* v. *Boyden*, 275 Mass. 564; *Commissioner of Banks* v. *Harrigan*, 291 Mass. 353, 356.

But we are of opinion that the defendants ought not to be called upon to answer this declaration because of its failure to "state concisely and with substantial certainty the substantive facts necessary to constitute the cause of action," as required by G. L. (Ter. Ed.) c. 231, § 7, Second. The deficiencies of the declaration in this respect have already been pointed out. They consist of allegations immaterial to the cause of action but likely to be understood by the jury in a sense highly derogatory and prejudicial to the defendants, and in an excessive indulgence in characterization as distinguished from factual allegation.

*Order sustaining demurrer affirmed.*