Hope Rose Carr & others *vs.* Assessors of Springfield.

Hampden.     March 3, 1959. — April 22, 1959.

Present: Wilkins, C.J., Spalding, Williams, Counihan, & Cutter, JJ.

*Moot Question.   Taxation,* Assessors; Real estate tax: assessment. *Equity Jurisdiction,* Taxable inhabitants' suit. *Public Officer.*

Decrees sustaining a demurrer to and dismissing a petition filed in May, 1958, under G. L. c. 40, § 53, by ten taxpayers against the assessors of a city alleging that the assessors were about to assess the real estate therein at substantially less than fair cash values and at "widely varying percentages" thereof must be affirmed since it was apparent at the time of this court's decision of the case in 1959 that the 1958 assessments must have been made and the resulting taxes substantially collected and that the case had become moot as to those assessments, and since further allegations in the petition that "for subsequent years" the assessors "plan . . . to follow the same . . . practice" of disproportionate assessments and such practice "appears imminent . . . for . . . subsequent years" did not, as of the time the allegations were made in 1958, state a case under the statute as to the 1959 assessments.

Petition in equity, filed in the Superior Court on May 14, 1958.

An interlocutory decree sustaining a demurrer to the petition and a final decree dismissing the petition were entered by order of *Nagle,* J.

*Leland A. Stone,* (*Philip E. Saks* with him,) for the petitioners.

*S. Thomas Martinelli,* City Solicitor, (*Cosmo M. Ansara,* Assistant City Solicitor, with him,) for the respondents.

Carr *v.* Assessors of Springfield.

Cutter, J. This is a ten taxpayers' petition under G. L. c. 40, § 53,[1] to "prohibit . . . raising . . . money by taxation of real estate in a manner not authorized by law." The taxpayers allege that they "are advised and believe and therefore aver that for . . . several years the . . . assessors . . . [have] pursued a policy of fractional or percentage valuations of real estate; that assessments have been based on such . . . valuations . . . [which] have not been made on a uniform basis . . . but . . . different properties have been assessed at widely varying percentages of their fair cash value; . . . that the greater portion of . . . assessments are at substantially less than the fair cash values of the . . . parcels; . . . that the general average . . . is substantially less than one hundred per cent of the full . . . cash values; . . . [and] that the . . . [assessors], for 1958, are about to, and . . . intend to, pursue the same valuation and assessment practice . . . [and] to commit the resultant tax list, with its unlawful valuations and assessments and their warrant to the collector of taxes . . . and . . . for subsequent years . . . intend to follow the same unlawful practice." They further aver that it is the duty of the assessors to "levy proportional and reasonable assessments . . . and by statute [G. L. c. 59, §§ 2,[2] 3, 38] the uniform standard to apply . . . is fair cash value"; that certain of the taxpayers own real estate "which several parcels have been . . . overvalued . . . in relation to other real estate . . . assessed at substantially lower percentages of fair cash value, and in relation to the general average . . . ratio of assessments to fair cash value . . . which . . . ratio is well under one hundred per cent . . . [so that the taxpayers] will be forced to pay more than their proportionate shares of the taxes raised"; that against this type of assessment (e.g. "eighty per cent assessments as against

[1] Section 53 reads, "If a town or any of its officers . . . are about to raise . . . money . . . in any manner other than that . . . in which such town has the legal and constitutional right and power to raise . . . money . . . the . . . superior court may, upon the petition of not less than ten taxable inhabitants of the town, determine the same in equity . . . ."

[2] As amended by St. 1954, c. 459, § 1.

forty per cent assessments") the remedies "by appeal from overassessment are not available" and would not "result in equalization"; and that the taxpayers have no adequate remedy at law. The trial judge sustained a demurrer by the assessors. The taxpayers appealed from both the interlocutory decree sustaining the demurrer and the final decree dismissing the petition.

In *Dowling* v. *Assessors of Boston*, 268 Mass. 480, 485, it was held that assessors come within G. L. c. 40, § 53, but in the particular case equitable relief was denied because (p. 490) "the method adopted . . . for assessing taxes . . . [was] in conformity to the terms of the enabling statutes" and the court noted (at p. 491) "nothing disproportionate in the proposed tax levy." In *Amory* v. *Assessors of Boston*, 306 Mass. 354, 357–358, this court held that mandamus did not lie to force assessors (see p. 356) "to perform their official duties fairly . . . and to refrain from valuing taxable property . . . otherwise than at its fair cash value in accordance with their honest judgment" in view of the existence of the remedy under c. 40, § 53. In the later case of *Amory* v. *Assessors of Boston*, 310 Mass. 199, 203–204, relief against overvaluation of properties in Boston was denied to ten taxpayers, where it was not "alleged that the manner of assessment will result in a total . . . in excess of the . . . amount required for municipal expenses" and the petition on the issue of overassessment failed "to show that the protection of the public interests requires the intervention of a court of equity." See comment 22 B. U. L. Rev. 440.

The statutory duty of the assessors, of course, is to assess all taxable property in the city at its full and fair cash value as determined in their honest judgment, without discriminatory treatment of any persons or property. "The standard . . . established by G. L. c. 59, § 38, is the fair cash valuation of all the real and personal estate subject to taxation. That standard cannot be varied by public officers . . . . There must be rigid adherence to that standard." *Waltham Watch & Clock Co.* v. *Waltham*, 272 Mass. 396, 412. This principle and the provisions of c. 59, § 38, are supported

by the Massachusetts Constitution, Part II, c. 1, § 1, art. 4, giving authority "to the . . . general court . . . to impose and levy proportional and reasonable assessments . . . and taxes." Article 4 has been "consistently construed . . . as establishing the principle of uniformity of taxation of all classes of taxable property." See cases collected in Nichols, Taxation in Massachusetts (3d ed.) §§ 63, 64, pp. 109, 112.

The existence of the constitutional and statutory principle requiring proportional property taxation does not, by itself, require or permit relief in a proceeding in equity under c. 40, § 53, for relief under § 53 is limited by general equitable principles as well as by the terms of the statute. Although the principle of proportional taxation was relied on by the ten taxpayers in the second *Amory* case (310 Mass. 199) a demurrer was there sustained, the court mentioning various grounds for its action, including what was at least a strong suggestion that c. 40, § 53, was not intended to give ten taxpayers a right "to secure what in effect would be an abatement of taxes upon thousands of parcels of real estate," or to permit "ten taxpayers, none of whom is illegally burdened by the assessment of a tax upon his property and none of whom contends that the total . . . assessment is excessive, . . . [to] compel a revaluation of nearly all of the taxable real estate of a large city."

We need not decide, however, whether upon these allegations any such petition could be maintained[1] despite the suggestions in the second *Amory* case, just mentioned. It is now apparent that the present case has become moot as to 1958 assessments, and that no case is adequately stated under c. 40, § 53, with respect to 1959 and later assessments. The petition was filed on May 14, 1958, and indicates that the 1958 assessment process had not then been completed. The 1959 assessments then were over a year in the future. To be sure, the petition alleges "that for subsequent years"

---

[1] See discussion of this problem by the Supreme Court of New Jersey in *Switz* v. *Middletown*, 23 N. J. 580, 598–599. Cf. *Randell* v. *Bridgeport*, 63 Conn. 321, 323–324, overruled in *E. Ingraham Co.* v. *Bristol*, 144 Conn. 374, 383, which points out the practical problems presented in a situation closely comparable to that in the present case. Cf. also *Burritt Mut. Sav. Bank* v. *New Britain*, 20 Conn. Supp. 476, 480.

the assessors "plan . . . to follow the same . . . practice" and that the same practice of disproportionate assessments "appears imminent . . . for 1958 and subsequent years." Under c. 40, § 53, however, proceedings to restrain municipal official action cannot anticipate events beyond the relatively near future. There must be some reasonably certain and immediate unlawful action in prospect to warrant relief under § 53. "A well grounded expectation of such [unlawful] conduct is not enough to confer jurisdiction under the statute." *Fuller* v. *Trustees of Deerfield Academy*, 252 Mass. 258, 260. It is inappropriate to assume and allege in 1958, over a year in advance, that the assessors "will not apply proper principles," in the performance of their public duties. See *Board of Health of Woburn* v. *Sousa*, 338 Mass. 547, 554. Even the collection process on the 1958 assessments must have now been completed, or substantially completed. We do not understand that any injunctive relief with respect to 1958 assessments is now practicable, if, indeed, any such relief is now sought.[1] No motion has been made to amend the petition to make more specific allegations with respect to 1959. The original allegations, viewed as of the time when they were made, did not set out with certainty sufficient facts with respect to 1959 to show the type of immediately contemplated municipal action necessary to state a case under c. 40, § 53, even if it be assumed that a petition can be maintained under § 53 seeking essentially assessment equalization for the whole of a large city.[2]

> *Interlocutory decree affirmed.*
> *Final decree affirmed.*

---

[1] It was stated at the arguments that proceedings have been brought under G. L. c. 60, § 98, to recover, as illegally assessed and as wholly illegal, the 1958 taxes paid by these taxpayers under protest. We have not considered the effect of the alleged 1958 assessment methods under § 98 or under generally related sections like §§ 82, 87.

[2] Obviously such an equalization involves problems of great practical complexity, usually solved by executive action or pursuant to express legislative directions. These problems may certainly be taken into account in a proceeding in equity seeking such an equalization, under the principle that, if the consequences of giving relief are speculative or relief is unlikely to be effective, relief may be denied in appropriate cases. See *Virginian Ry.* v. *System Fedn. No. 40*, 300 U. S. 515, 550–551; *Eccles* v. *Peoples Bank*, 333 U. S. 426, 431. See also *Levine* v. *Black*, 312 Mass. 242, 244.