LELAND A. STONE *vs.* CITY OF SPRINGFIELD.

Hampden.   May 3, 1960. — June 24, 1960.

Present: WILKINS, C.J., SPALDING, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Taxation,* Real estate tax: assessment; Assessors. *Pleading, Civil,* Declaration.

An intentional assessment of all real estate in a municipality at widely differing percentages of fair cash value would be a violation by the assessors of their oath under G. L. c. 59, § 52, and of their duty under § 38 and would not comply with the constitutional requirement of "proportional" assessment. [248]

In an action under G. L. c. 60, § 98, to recover taxes assessed in a certain year on real estate in a city and paid by the plaintiff under protest, a demurrer was properly sustained to a declaration containing only general allegations that the assessors in that year "pursued a deliberate and intentional policy of fractional or percentage valuations of real estate in" the city "not made on a uniform basis for all real estate," that "different properties were valued and assessed at widely varying percentages of and under their fair cash value," and that "such . . . assessment practices were not in conformity with the laws . . . but were in gross and intentional violation of . . . [the] Constitution and statutes and therefore the entire real estate assessments made and taxes levied thereunder . . . in" that year "were . . . void." [249]

CONTRACT. Writ in the District Court of Springfield dated January 9, 1959.

The action was heard by *O'Malley,* J. on a demurrer.

*Philip E. Saks,* for the plaintiff.

*Cosmo M. Ansara,* Assistant City Solicitor, for the defendant.

CUTTER, J.   This is an action under G. L. c. 60, § 98,[1]

---

[1] Section 98 reads, "No action to recover back a tax shall be maintained . . . unless commenced within three months after payment of the tax nor unless such tax is paid . . . after . . . a written protest signed by [the person paying the tax] . . . . In an action founded on an error or irregularity in the assessment or apportionment of a tax, only the amount in excess of the tax for which the plaintiff was liable shall be recoverable; and no sale, contract or levy shall be avoided solely by reason of such error or irregularity."

to recover real estate taxes paid under protest. A District Court judge sustained a demurrer which asserted (1) that no cause of action under § 98 had been stated; (2) that the exclusive remedy was by abatement proceedings (G. L. c. 59, §§ 59–74); and (3) that the taxpayer improperly seeks to recover the total taxes paid instead of "only the amount in excess of the tax for which the plaintiff was liable." The Appellate Division affirmed the order sustaining the demurrer and dismissed the report. The taxpayer has appealed.

Count 1 of the declaration alleges, in part, "that for the year 1958 . . . the . . . [city], through its board of assessors, pursued a deliberate and intentional policy of fractional or percentage valuations of real estate in Springfield; that such valuations were not made on a uniform basis for all real estate, but that different properties were valued and assessed at widely varying percentages of and under their fair cash value; that assessments in 1958 were based on such fractional or percentage valuations; that the greater portion of the real estate assessments made by the defendant in 1958 were on a nonuniform basis and substantially less than and without regard for their fair cash values; that such . . . assessment practices were not in conformity with the laws . . . but were in gross and intentional violation of our Constitution and statutes and therefore the entire real estate assessments made and taxes levied thereunder . . . in the year 1958 were . . . void." Count 1 also alleges that the taxpayer owned on January 1, 1958, specific real estate assessed for $6,600; that there was assessed with respect to this real estate a tax of $444.84 which was paid by the taxpayer "after written protest signed by him"; and that the "assessment and resulting tax levy were for the reasons stated . . . void." Counts 2 to 7 purport to incorporate count 1 by reference in seeking recovery of 1958 taxes on other parcels.

1. We assume that the taxpayer by his exceedingly general allegations attempts to raise for decision the question whether the whole assessment of the city for 1958 is void

where there has been an intentional assessment of all real estate in the city at widely differing fractions or percentages (less than unity or 100%) of fair cash value discriminating against this taxpayer. If we were so to interpret the allegations and if the allegations should be proved to be true, then there would have been a deliberate violation by the assessors of their oath (G. L. c. 59, § 52, as amended through St. 1928, c. 14, § 5), and of the obligation imposed upon them by the Constitution to make a proportional valuation and by G. L. c. 59, § 38, to assess each parcel at its fair cash value.

In *Carr* v. *Assessors of Springfield,* 339 Mass. 89, 92–93, somewhat similar allegations were made in a proceeding under G. L. c. 40, § 53, to enjoin the 1958 assessments. In the *Carr* case (ordered dismissed on April 22, 1959, because by then it had become moot), this court (at pp. 91–92) reviewed earlier decisions stating the statutory duty of the assessors. In *Opinion of the Justices, post,* 738, 750, we have recently referred to the controlling force of the requirements of the Constitution that property taxation be "proportional" and that each individual (art. 10 of the Declaration of Rights) "contribute his share to the expense" of the government. An intentionally made, widely disproportionate assessment would constitute a gross violation of "a fundamental constitutional limitation upon the power . . . to impose property taxes" (see *Opinion of the Justices,* 324 Mass. 724, 728) and might result also in denial of rights under the equal protection clause of the Fourteenth Amendment, and under G. L. c. 59, § 38.[2] See *Opinion of the Justices,* 332 Mass. 769, 778–780; *Dehydrating Process Co. of Gloucester, Inc.* v. *Gloucester,* 334 Mass. 287, 293.

2. We must determine whether the taxpayer in his decla-

---

[2] "The provisions of . . . [§ 38] as to the assessment of taxes must be followed . . . with somewhat technical strictness." *County of Middlesex* v. *Waltham,* 278 Mass. 514, 517–518. It also has been said, "All those provisions which are intended for . . . securing an equality of taxation . . . are mandatory. They are conditions precedent to a valid tax and if they are not observed the citizen is not legally assessed." Nichols, Taxation in Massachusetts (3d ed.) pp. 448–449. See *ibid.,* pp. 109–112.

ration sufficiently alleges facts (as opposed to mere conclusions) which, if proved, would establish that the assessors deliberately violated their statutory duty and intentionally assessed all the property in the city at less than its fair cash value, on a nonproportional basis, and in a manner discriminating against the taxpayer. In *Amory* v. *Assessors of Boston,* 310 Mass. 199, 201, this court, in denying relief, assumed in favor of the then petitioners that somewhat comparable general allegations were "not lacking in certainty" and also were "not mere conclusions of law but . . . conclusions of fact." In *Doherty* v. *Commissioner of Ins.* 328 Mass. 161, 163, however, a petition under G. L. c. 175, § 113B (as amended by St. 1935, c. 459, § 4), was held to consist "of nothing more than a series of general and broad conclusions, unsupported by any definite and specific averments of facts." The court in the *Doherty* case, as in this case, was dealing with "general allegations, stating conclusions as to the conduct of . . . public officials." This court recognized that, where the actions of public officials are being questioned, careful specification of the facts, showing an injury to the plaintiff, which the plaintiff expects to prove, should be made in his pleading if it is to be good against demurrer. See G. L. c. 231, § 7, Second; *Dealtry* v. *Selectmen of Watertown,* 279 Mass. 22, 26–27; *Houghton* v. *School Comm. of Somerville,* 306 Mass. 542, 547. See also *Wesalo* v. *Commissioner of Ins.* 299 Mass. 495, 498; *Regional Land Corp.* v. *McLaughlin,* 334 Mass. 276, 281; *Joyce* v. *Hickey,* 337 Mass. 118, 123. Cf. *DeVincent Ford Sales, Inc.* v. *First Mass. Corp.* 336 Mass. 448, 450–454.

Here it would be reasonable to expect the plaintiff, without improperly stating evidence in his declaration, to make specific allegations of such asserted facts as would, if proved, establish invalid official action, as, for example, the precise nature of the lack of uniformity in assessments which he expects to prove and the circumstances indicating that it was intentionally discriminatory, rather than caused by inadvertence, mistake, or incompetence. We think the demurrer was properly sustained because of the inadequacy and indefinite nature of the allegations in the declaration.

We are reinforced in our view of this declaration by the necessity of specific allegations if judicial inquiry is not to cover an unduly wide range in a case of this character. As was pointed out in *Amory* v. *Assessors of Boston,* 310 Mass. 199, 203, a plaintiff, in this sort of case, essentially asks the court to make "a revaluation of nearly all of the taxable real estate of a large city." Such a demand necessarily presents many complicated questions of fact and difficult issues of law. It is an area in which the courts should be slow to deal with issues of fact or law relating to properties other than those of the litigants before it, unless clearly required to do so.

It is doubtless for some such reasons that, in the past, efforts to prevent in advance allegedly improper and disproportionate assessments have not been successful. See *Amory* v. *Assessors of Boston,* 306 Mass. 354, 357–358 (mandamus held not available, in view of G. L. c. 40, § 53); *Amory* v. *Assessors of Boston,* 310 Mass. 199, 203–204 (proceeding under § 53 unavailing in the circumstances). See also *Dowling* v. *Assessors of Boston,* 268 Mass. 480, 483–485.

General Laws c. 59, § 59 (as amended through St. 1946, c. 199, § 1), provides for a reasonable abatement if the assessors find that an applicant for abatement is "taxed *at more than his just proportion,* or upon an assessment of any of his property in excess of its fair cash value" (emphasis supplied). Nevertheless, at least in recent years, even applications for abatement of real estate taxes under § 59 in practice have been dealt with in relation to whether the taxpayer's land is assessed for more than its fair cash value and without regard to whether other property is assessed at its full, fair cash value. See *Tremont & Suffolk Mills* v. *Lowell,* 271 Mass. 1, 16; *Wynn* v. *Assessors of Boston,* 281 Mass. 245, 248; *Amory* v. *Assessors of Boston,* 306 Mass. 354, 357, and cases cited; Nichols, Taxation in Massachusetts (3d ed.) 303–307, 321–323; cf. *ibid.,* 443–454. See also *Waltham Watch & Clock Co.* v. *Waltham,* 272 Mass. 396, 412; *Revere* v. *Revere Constr. Co.* 285 Mass. 243, 251; *Amory* v. *Assessors of Boston,* 310 Mass. 199, 202–203; *Bos-*

ton Gas Co. v. Assessors of Boston, 334 Mass. 549, 567. Cf. Lincoln v. Worcester, 8 Cush. 55, 61; Chicopee v. County Commrs. of Hampden, 16 Gray, 38, 40.

There can be little doubt that an assessment may be excessive in a constitutional sense, not because land is assessed at a figure in excess of its fair cash value, but because it is assessed at less than fair cash value while the land of other taxpayers is intentionally assessed at even lower percentages of the full, fair cash value of such land. Such unequal assessments, of course, would make the particular taxpayer pay more than his just proportion of the taxes assessed. Yet to prove that such a tax is excessive requires a scope of inquiry extending far beyond the value and the assessment of the land of one taxpayer. Except upon clear allegation of specific facts showing a widespread scheme of intentional discrimination rather than merely isolated, inadvertent lack of uniformity, such an inquiry should not be required of the Appellate Tax Board or of a court (as contrasted with the assessors who have a broad duty to make proportional assessments of all property in their community).

3. We do not reach the question whether, upon proper allegation and proof of widespread, intentional, nonproportional assessments at levels below fair cash value, to the injury of a taxpayer, that taxpayer may recover under G. L. c. 60, § 98, a tax paid by him, as a void tax, or may receive an abatement by proceeding under c. 59, § 59, and related sections. The facts alleged in this case do not make it necessary to decide whether the illegality of such assessments makes them void.[3] We also need not decide (a) what other forms of relief may be available against such an assessment scheme, or (b) whether the types of relief denied in the Amory cases (306 Mass. 354; 310 Mass 199) or de-

---

[3] When the assessment is illegal and void, recovery has been allowed in an action of contract. Goodrich v. Lunenburg, 9 Gray, 38, 41–42. Dexter v. Boston, 176 Mass. 247, 252. County of Middlesex v. Waltham, 278 Mass. 514, 517–518. See Harrington v. Glidden, 179 Mass. 486, 492; Bogigian v. Commissioner of Corps. & Taxn. 256 Mass. 142, 146–147; Norwood v. Norwood Civic Assn. 340 Mass. 518, 522–524. See also Assessors of Springfield v. New England Tel. & Tel. Co. 330 Mass. 198, 204.

claratory relief (as was suggested in the city's brief, see G. L. c. 231A) would be available upon appropriate allegations and proof. All these questions should be decided only in litigation in which the relevant facts are adequately alleged.

*Order dismissing report affirmed.*